IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DORA W. PASKEL                                                    PLAINTIFF

V.                                        CIVIL ACTION NO.  3:13CV899- CWR-LRA

CAROLYN W.  COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY              DEFENDANT

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Dora Paskel appeals the final decision denying her application for Supplemental

Security Income ("SSI").  The Commissioner requests an order pursuant to 42 U.S.C. §

405(g), affirming the final decision of the Administrative Law Judge.  Having carefully

considered the hearing transcript, the medical records in evidence, and all the applicable

law, the undersigned recommends that the decision be remanded for the reasons that

follow.

**Factual and Procedural Background**

On June 6, 2009, Paskel protectively filed an application for SSI, alleging she

became disabled on May 19, 2009.  The application was denied initially and on

reconsideration.  She appealed the denial and on April 4, 2011, Administrative Law Judge

Frederick McGrath ("ALJ") rendered an unfavorable decision finding that Plaintiff had

not established a disability within the meaning of the Social Security Act.  The Appeals

Council denied Plaintiff's request for review.  She now appeals that decision.

When she filed her application, Paskel was 38 years old, which is considered a

younger individual for social security purposes.  She obtained her General Equivalency

Diploma (GED) in 1990.  She had no past relevant work experience, having only done

some housekeeping work with her mother over ten years ago.  She alleges she is disabled

due to syncope, arthritis in the lower back, a rod in the right hip, and depression.[1]

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled

under the Social Security Act.  At step one of the five-step sequential evaluation,[2] the ALJ

found Plaintiff had not engaged in substantial gainful activity since the date of her

application, June 6, 2009.  At steps two and three, the ALJ found that although her

depression, anxiety, personality disorder, disorder of the back, obesity, and cardiac

disorders were severe, none of her impairments, or combination of impairments,  met or

medically equaled any listing.  At step four, the ALJ found that Plaintiff has no past

relevant work experience, but has the residual functional capacity to perform light work

except:

> she can only perform unskilled work requiring simple, routine and
> repetitive one to two step instruction jobs.  She cannot work with the
> general public.  She cannot climb ladders, ropes or scaffolds.  She can
> perform goal oriented work but cannot perform production work.  She
> cannot work around dangerous heights or dangerous machinery.[3]

The ALJ concluded at step five, based on vocational expert testimony, that given

Plaintiff's age, education, work experience, and residual functional capacity, she could

---

[1]ECF No. 11, pp. 107, 169.

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff
engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does
plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20
C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is
there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*,
168 F.3d 152,154 (5th Cir. 1999).

[3]ECF No. 11, p. 20.

perform work such as laundry folder, produce sorter, and garment presser.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff alleges in her first assignment of error that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to accord proper weight to the opinions of her treating therapist, Mary Hathorn; her treating psychiatrist, Dr. Robert Hardy; the consulting psychologist, Dr. Philip Drumheller; and, the consulting medical examiner, Dr. Leroy Howell.

An ALJ is free to reject any medical opinion, in whole or in part, when good cause is shown. Good causes exists when the evidence supports a contrary conclusion, when

the opinions are conclusory, or when they are unsupported by medically acceptable

clinical, laboratory, or diagnostic techniques.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th

Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64

F.3d 172 (5th Cir. 1995).  A treating source's opinion is entitled to great weight "[w]hen

the treating source has seen [the claimant] a number of times and long enough to have

obtained a longitudinal picture of [the claimant's] impairment."  *Giles v. Astrue,* 433 F.

App'x 241, 246 (5th Cir. 2011) (unpublished) (quotation omitted).  But the treating

physician's opinions are not conclusive.  *Pineda v. Astrue*, 289 F.App'x 710, 713 (5th

Cir.  2008).  A treating physician's opinion may be rebutted "when there is competing

first-hand medical evidence, or if there is other medical evidence from physicians who

have treated or examined the claimant and have a specific medical basis for a contrary

opinion."  *Id.*  (citing *Newton,* 209 F.3d at 458).

Plaintiff asserts here that the ALJ erred in finding that her depression did not meet

or medically equal Listing 12.04 because he failed to assign significant weight to the

medical source statements of her therapist, treating psychiatrist, and the consulting

examiner, Dr. Drumheller.  *See* 20 C.F.R. § pt. 404, subpt. P., app.1, § 12.04B.  To meet

Listing 12.04, Plaintiff must demonstrate, *inter alia*, marked restrictions in two of the

following areas:  activities of daily living; maintaining social functioning; maintaining

concentration, persistence, or pace; and, repeated episodes of decompensation of

extended duration (defined as lasting at least two weeks).  *Id.*  Based on the record as a

whole, the ALJ concluded that Plaintiff's mental impairments did not meet or medically

equal Listing 12.04, as she had only moderate limitations in social functioning and

moderate limitations in concentration, persistence and pace, and was only mildly limited

in her activities of daily living with no episodes of decompensation.  He also found that

her mental impairments had "not resulted in such marginal adjustment that even a

minimal increase in mental demands or change in the environment would be predicted to

cause the individual to decompensate."  She also had no "current history of one or more

years' inability to function outside a highly supportive living arrangement with an

indication of continued need for such an environment."  In making these findings, the

ALJ was "entitled to determine the credibility of medical experts as well as lay witnesses

and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.

1994).[4]

Mental health records from Community Counseling Services ("CCS") reflect that

Plaintiff was diagnosed with major depression and has been seen every two-to-four weeks

by a CCS counselor, over the past four-to-five years.  Treatment records indicate that

Plaintiff's depression was primarily attributed to her financial instability and physical

health, and that she was frequently counseled on coping techniques and medication

compliance.  Progress notes from December 2008 though September 2009 indicate that

she was principally seen by CCS counselor, Margaret Yates, who frequently noted that

Plaintiff was making progress.  In June 2009, CCS Counselor, Mary Hathorn, who

---

[4]ECF No. 11, p. 20.

primarily treated Plaintiff from February 2006 through December 2008, submitted an

assessment indicating that Plaintiff suffers from major depression with severe psychotic

features, and was markedly depressed with poor abilities in almost all mental areas of

functioning.  The ALJ assigned little weight to this assessment, finding it was inconsistent

with the substantial evidence of record as set forth herein, and was contrary to the

opinions of  Dr. Hardy and Dr. Lane, who found no evidence of looseness or psychotic

symptoms.[5]  The Court further notes that as a mental health counselor, Ms. Hathorn's

assessment is not an "acceptable medical source" entitled to the same weight as a

psychologist's or psychiatrist's opinion.  *Compare* 20 C.F.R. § 416.913 (d)(1), 20 C.F.R.

§ § 416.927 (a)(2), (a)(3).

Plaintiff also argues that the ALJ erred in failing to assign controlling weight to her

treating psychiatrist, Dr. Hardy.  The evidence confirms that Plaintiff was seen by Dr.

Hardy, four times per year from May 2006 – August 2009, but then only twice in 2010, in

March and July of that year.  In October 2009, Dr. Hardy submitted a medical source

statement opining that Plaintiff had moderate restrictions in her activities of daily living,

marked difficulties in maintaining social functioning, and marked deficiencies of

concentration, persistence or pace.  He also indicated that she had experienced "four or

more" episodes of decompensation of extended duration, poor memory, social withdrawal

or isolation, decreased energy, anhedonia or pervasive loss of interests, and difficulty

---

[5]ECF No. 11, pp. 405-407.

thinking or concentrating. Approximately two years later, in February 2011, Dr. Hardy submitted an updated opinion indicating that there had been no changes to Plaintiff's limitations.[6]

In compliance with controlling Fifth Circuit law, the ALJ provided the following good cause for assigning Dr. Hardy's medical sources statements minimal weight:

> . . . . In progress notes from August 2009, the claimant conveyed to Dr. Hardy she was doing better and she denied psychotic symptoms. The claimant told Dr. Hardy she was sleeping fairly well, her appetite was good, and for fun she enjoyed being with friends. Dr. Hardy determined the claimant was cooperative and her affect was well modulated. Dr. Hardy determined she was cheerful, logical, and she exhibited no evidence of looseness or psychotic symptoms. Dr. Hardy determined her judgment was good and she denied suicidal ideation and he diagnosed her with major depression. In July 2010, the claimant presented to Dr. Hardy and reported she was doing alright and she was not having any psychotic symptoms. The claimant related being comfortable at home with children and a grandchild. Dr. Hardy determined there was no evidence of looseness or psychotic symptoms and she was logical with good judgment.[7]

As noted by the ALJ, Dr. Hardy's assessments were not only contrary to the record as a whole, but "greatly inconsistent with his own examinations."[8] Contrary to the severity of restrictions he assigned, his progress notes largely reflect findings similar to those described in August 2009 and July 2010. There is also no evidence of record supporting his findings that Plaintiff decompensated four or more times in a year.

Plaintiff additionally asserts that the ALJ erred in assigning significant weight instead to the comprehensive mental status examination performed by one-time

---

[6]ECF No. 11, pp. 443-453; 531-536.

[7]ECF No. 11, p. 16.

[8]ECF No. 11, p. 17.

consulting psychologist, Dr. James Lane, in August 2009.  Contrary to what Plaintiff

argues, although a consulting examiner, Dr. Lane was not a one-time examiner.  The

record reveals that Plaintiff has filed multiple applications for disability benefits, and Dr.

Lane expressly indicated that he reviewed his previous mental status examinations of

Plaintiff from 2004, 2005, and 2008, as well as her mental health records from CCS, in

preparing his medical source statement.  In his most recent examination in 2009, Dr. Lane

noted that Plaintiff was "somewhat dramatic and was often vague and evasive."  He also

noted that she was not "fully cooperative or credible," that she "appeared to malinger on

IQ-related items," and even refused to answer questions at times.  With regard to her

daily activities, Plaintiff stated that she just sleeps because her television no longer works,

but later acknowledged that she also microwaves food, helps make the bed, and goes to

church once a month.  On examination, she displayed a "restricted affect, mild anxiety,

and a somewhat depressed mood."  She also claimed not to know what year it was and

reported that she talks to herself and sees snakes.  But as Dr. Lane noted, Dr. Hardy's

notes indicate that Plaintiff denied experiencing hallucinations.  Dr. Hardy also found no

evidence of looseness or psychotic symptoms. [9]

    Based on his examination, Dr. Lane diagnosed Plaintiff with a depressive disorder,

and a personality disorder with prominent dependent and passive-aggressive personality

features.  He found she was mildly impaired in performing routine, repetitive tasks and in

---

[9]ECF No. 11, pp. 438-441.

maintaining attention and concentration; and mildly to moderately impaired in interacting

appropriately with co-workers and accepting supervision.  These findings were generally

consistent with the psychiatric review technique form submitted by a State agency

psychologist in September 2009, who similarly concluded that Plaintiff had mild

impairments in activities of daily living, in maintaining social functioning, and in

maintaining concentration, persistence, or pace, and no episodes of decompensation.  To

the extent the agency psychologist found Plaintiff less restricted than Dr. Lane, the ALJ

properly assigned the opinion less weight as it was inconsistent with the record as a

whole.[10]

Plaintiff nevertheless argues that the ALJ erred in failing to assign significant

weight to the findings of a second consulting psychological examiner, Dr. Philip

Drumheller.  In December 2010, Dr. Drumheller conducted a comprehensive mental

status examination and observed that Plaintiff was mildly depressed and mildly to

moderately anxious, and agitated.  He also noted her reports that she cries approximately

three times per week, and had a very limited work history, having only helped her mother

do housekeeping work for one year, approximately 10-15 years ago.  Significantly,

contrary to her earlier claims, Plaintiff denied *ever* experiencing hallucinations to Dr.

Drumheller.  Based on his observations, Dr. Drumheller diagnosed Plaintiff with post-

traumatic stress disorder, chronic type, and dysthymic disorder, early onset, rule out

---

[10]ECF No. 11, pp. 464-466.

mental retardation.  Dr. Drumheller indicated that Plaintiff was fair to poorly limited in

her ability to make occupational, performance, and social adjustments and noted that she

was incapable of managing benefits in her own interest.  He opined further that Plaintiff

was mildly to moderately impaired in her abilities to perform routine, repetitive tasks and

to interact with co-workers; and moderately impaired in her ability to receive supervision.

He also opined that she had poor concentration and attention, but "believed that mental

retardation should be ruled out."[11]  He additionally noted that:

> The prognosis over the next twelve months is poor to guarded as the
> claimant's symptoms seem to be chronic in nature and of mild to moderate
> severity and she seems to be having only a marginally positive response to
> her current medication regimen.  It is also unlikely that her intellectual
> functioning will improve remarkably in the next twelve months.[12]

The ALJ accorded Dr. Drumheller's assessment little weight, noting Dr. Lane's

findings that Plaintiff had consistently normal psychiatric examinations and was only

mildly impaired in the area of attention and concentration.  Plaintiff alleges that the ALJ

cannot pick and choose only the evidence that supports his position.  *Loza v. Apfel*, 219

F.3d 378, 393 (5th Cir.2000).  She argues that Dr. Drumheller's findings were entitled to

significant weight because they were consistent with the opinions of both Dr. Hardy and

CCS Counselor Mary Hathorn.  This argument is unavailing.  As noted *supra,* the ALJ

articulated good cause, for assigning less than significant weight to the limitations

assigned by Hathorn and Dr. Hardy as their medical source statements were inconsistent

---

[11]ECF No. 11, pp. 619-624.

[12]*Id.* at 698.

with their own treatment records and/or those of other professionals.  Although Plaintiff

argues the ALJ erred in accepting the opinions of Dr. Lane over Dr. Drumheller's,

conflicts in evidence are for the Commissioner to resolve, not this Court.  *Hernandez v.*

*Astrue*, 269 F. App'x 511, 515 (5th Cir.  2008).  To the extent their opinions were in

tension with one another, the ALJ was justified in accepting the findings of Dr. Lane's

over Dr. Drumheller's.  *Pineda,* 289 F. App'x at 713.

Plaintiff also argues that the ALJ erred in failing to adopt the medical source

statement submitted by the consulting medical examiner, Dr. Leroy Howell – specifically,

his finding that her lower back pain limits her to four hours standing/walking/sitting in a

workday.  Examination records reflect that Plaintiff advised Dr. Howell, in relevant part,

that she was in a motor vehicle accident in 2003 and has had pain in her lower back and

hip since that time.  She also continues to experience stiffness in her lower back in the

mornings, and her back pain is reportedly worse when she remains static for long periods

of time.  She denies radiating back pain, but states her hip pain radiates to her knee.[13]

Upon examination, Dr. Howell noted that Plaintiff was morbidly obese, and had

tenderness in her lower back.  She otherwise had a normal gait and could toe and heel

walk, as well as squat and recover.  He diagnosed her with low back pain, secondary to

ligamentous laxity; a tremor secondary to probable Abilify therapy; clinical depression;

right hip and thigh pain secondary to a prior injury; and, syncope, which he noted had

---

[13]ECF No. 11, pp. 619-624.

cleared up fairly well.  Based on these findings, Dr. Howell opined that Plaintiff would be limited to standing, walking, and sitting no more than four hours in an eight-hour workday, and could lift 20 pounds occasionally and 10 pounds frequently.  He also noted that she would have occasional limitations in all postural activities but no manipulative limitations, and that her only environmental limitations would require her to avoid heights and moving machinery.[14]

The ALJ assigned some weight to Dr. Howell's medical source statement but did not adopt it entirely.  He noted that the physical limitations assessed by Dr. Howell were consistent with a less than light exertional level, but found Plaintiff had the residual functional capacity to perform a reduced range of unskilled, light work because she was capable of standing six hours.  The Code of Federal Regulations defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a ***full or wide range of light work***, you must have the ability to do substantially all of these activities.

*Id*; 20 C.F.R. § 404.1567(b) (emphasis added).  Social Security Ruling 83–10 clarifies: "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately *6 hours* of an 8–hour workday.  Sitting may occur intermittently during

---

[14]*Id.*

12

the remaining time."  SSR 83–10, 1983 WL 31251, at *5; (emphasis added); *see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.  2001) (observing that the Social Security Administration's rulings are not binding on the court, but noting that the Fifth Circuit has "frequently relied upon the rulings in evaluating ALJs' decisions").

In determining that Plaintiff has the residual functional capacity to perform a reduced range of light work, the ALJ properly considered the effects of her obesity and noted that the record evidence does not contain any diagnostic findings, signs, symptoms, or laboratory results which meet or medically equal any listing.  Nor is there evidence of "nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising."  Further, there is no evidence of record to establish "spinal arachnoiditis or lumbar spine stenosis with pseudo-claudication."  Plaintiff does not dispute any of these findings.  She contends rather, that in failing to adopt Dr. Howell's four-hour standing/walking limitation, which was uncontroverted by any other medical source statement, the ALJ overstepped his role as a fact finder and substituted his own judgment for that of a physician.[15]

The Commissioner responds that any error was harmless because the *regulatory definition* for light work provided in 20 C.F.R. § 416.967(b) is broad enough to encompass both Dr. Howell's four-hour limitation and the Dictionary of Occupational

---

[15]ECF No. 11, p. 19 (internal citations omitted).

Titles's definition for each of the jobs identified by the vocational expert at step five. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Plaintiff does not directly address either argument in her reply. She relies simply on the clarification provided in SSR 83-10, which addresses the manner in which disability evaluations are made under the Medical-Vocational Rules ("The Grids"), 20 C.F.R. § Pr. 404, Subpt. P. App. 2. She points to no objective medical signs or laboratory findings in the record that support Dr. Howell's standing assessment. Nor does the record reflect diagnoses from any treating source restricting Plaintiff to exertional demands that exceed light work.

Although the Court finds that the ALJ had good cause to reject Dr. Howell's standing assessment because it was not supported by the objective medical evidence, absent medical or other evidence supporting the ALJ's six-hour limitation in this case, or at minimum, an explanation as to how he arrived at this number, the ALJ's standing assessment is not supported by substantial evidence and should be remanded for further development of this issue. *Williams v. Astrue*, 355 F. App'x 828, 832, n. 6 (5th Cir. 2009); *Mitchell v. Colvin*, No. 3:11–CV–2664–BN, 2013 WL 4546729, at *9 (N.D.Tex. Aug.28, 2013) ("It is acceptable for the ALJ to make an assessment that Dr. Van Ness's conclusions should not receive significant weight and also to discount other medical sources, with the proper analysis, but the remaining record must include substantial evidence to support the ALJ's ultimate disability decision."); *see also Lucas v. Astrue,* Civil Action No. 3:09CV68-SSA, 2010 WL 236220 (N.D. Miss. June 10, 2010) (holding that ALJ's finding that Plaintiff can sit for six hours in an 8-hour workday is not

14

supported by substantial evidence as there was no medical proof to support such a conclusion).[16] Because the court so finds, it need not address Plaintiff's assertion that the ALJ erred in failing to find her disabled based on the vocational expert's testimony in response to her counsel's hypothetical questions at the administrative hearing.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge, that this cause be remanded for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

---

[16] *But see, Patterson v. Astrue,* Civil Acton No. 1:08CV13-SAA, 2008 WL 5104746 (N.D. Miss. Dec. 1, 2008) (rejecting claimant's argument that the ALJ improperly substituted his own opinion for the medical assessment of a physician; the greater weight of the medical evidence supported the ALJ's rejection of the physician's medical assessment).

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

     This the 29th day of June 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE